OPINION
{¶ 1} On April 23, 2003, Eric Tomlinson filed a parentage action in the Miami County Juvenile Court to determine if he is the father of Kamry Tomlinson born March 25, 2001. On August 13, 2003, the court determined that Eric Tomlinson is the father of Kamry. Tomlinson had been paying child support for Kamry pursuant to an administrative support order from the Miami County CSEA since November 2002.
 {¶ 2} On July 31, 2003, Eric was granted visitation with Kamry in accord with the court's Phase In visitation schedule. On February 24, 2004, the court's magistrate conducted a hearing and found that no modification of Eric's child support obligation should be made because there was less than 10% change from the current administrative support order. The magistrate also found that Eric was voluntarily underemployed. The magistrate made the following findings in that regard:
 {¶ 3} "8. Eric works for L Metro Enterprises dba Domino's Pizza.
 {¶ 4} "9. He has worked for Domino's for the last two years. He began as an hourly employee, was then promoted to salaried management. He managed the Centerville store. He was transferred to the Englewood store to manage it due to the poor performance of the previous manager.
 {¶ 5} "10. In 2002, Eric earned $45,020.52 in gross income. This was made up of $27,680.00 in regular earnings, $16,672.93 in bonuses, $580.00 in vacation pay and $87.59 in tips.
 {¶ 6} "11. In 2003, Eric earned $43,714.65 in gross income. This was made up of $24,714.65 in regular earnings, $18,246.91 in bonuses, $840.00 in vacation pay, and $161.65 in tips and $32.76 in Holiday pay.
 {¶ 7} "12. Eric's bonuses were based upon the store's performance and profits.
 {¶ 8} "13. Eric received a bonus for being named `Manager of the Quarter.' He will continue to receive this bonus until the end of 2004.
 {¶ 9} "14. In September 2003, Eric was demoted from manager to support staff/driver. He continues to work at the Englewood Domino's, twenty-five to thirty five hours a week. He earns $6.50 per hour, plus tips. He testified that his earnings currently are the $6,000 bonus for 2004, $6.50 an hour, thirty hours a week and $40.00 per week in tips. According to Plaintiff's Exhibit No. 5, for 2004 through February 8, 2004, Eric was paid $3,370.71 in gross earnings. This averages $561.78 per week. On an annual basis, Eric's gross earnings would be $29,212.56.
 {¶ 10} "15. Eric characterizes his job change as a `reassignment'. There is no evidence that the change was due to any disciplinary action or reprimand. Eric testified that the change was by `mutual decision'.
 {¶ 11} "16. According to Eric's testimony, his demotion from manager to part time support staff/driver was part of a normal reorganization undertaken by his employer without any regard to his performance or circumstances. This assertion is found not to be credible.
 {¶ 12} "17. Eric does not see a need to secure fulltime employment.
 {¶ 13} "18. Eric's hours can be scheduled from 3:00 p.m. until 2:00 a.m. during the week and 11:00 a.m. until 3:00 a.m. on the weekends. He has no set day off and no set pattern for his work schedule.
 {¶ 14} "19. Eric has an associate's degree in mathematics. He has computer skills. He has experience with factory work, both production and inventory.
 {¶ 15} "20. Eric took an introductory college class in the Fall Quarter 2003. He is not currently taking classes. He would like to return to school if he can afford it.
 {¶ 16} "21. When this matter was filed, Eric had a child support obligation for Danielle in the amount of $752.79 per month. As of January 7, 2004, the New York order was reduced to $281.66 per month ($65.00 per week).
 {¶ 17} "22. He currently has no health insurance for Kamry.
 {¶ 18} "23. Jennifer is employed by the Veterans' Administration at the hospital. She is a salaried employee and works second shift, Monday through Friday, 3:30 p.m. until midnight and alternate weekends, 7:00 a.m. until 3:00 p.m. She is occasionally offered overtime, but usually declines because of the additional day care costs.
 {¶ 19} "24. Jennifer's annual salary is $27,672.00.
 {¶ 20} "25. Jennifer carries health insurance for Kamry. The single plan costs $68.52 per biweekly pay period. The family plan costs $159.38 per biweekly pay period. The difference between the costs of the single plan and the family plan is $90.86 per biweekly pay period.
 {¶ 21} "26. Jennifer pays $100.00 per week for Kamry's day care. She uses a licensed day care provider.
 {¶ 22} "* * * *
 {¶ 23} "36. Eric is voluntarily underemployed. This determination is made on the following facts: a) In 2002, Eric earned $45,020.52 gross wages, of which $16,672.93 was a bonus based upon his store's performance; b) In 2003, Eric earned $43,995.97 gross wages, of which $18,246.91 was bonus based upon his store's performance; c) Eric's continuing on as a part time employee of L Metro Enterprises at a wage of $6.50 per hour was a mutual decision between himself and his employer; d) Eric's assertion that his demotion from salaried management to part time support/staff driver was part of a normal reassignment of staff is not credible; e) Eric offered no credible explanation to the Court as to why he was demoted; f) Eric does not see the need to secure fulltime employment; g) Eric has successful supervisory and management experience, has an Associate's degree in mathematics, has computer skills and work experience in both production and inventory of manufacturing.
 {¶ 24} "37. Given Eric's gross earnings in 2003 were $43,995.97 even after the effects of his voluntary underemployment for four months, there is no reduction in child support for the year 2003. Any other conclusion would be unjust and inappropriate and not in Kamry's best interest.
 {¶ 25} "38. For purposes of child support calculation, Eric is imputed with income of $27,680 per annum. This is the amount of his regular earnings from L Metro Enterprises in 2002. It is determined that Eric would have earned at least this amount in annual income after taking into account the factors set forth in Ohio Revised Code Section 3119.01(B)(11)(a), specifically his previous employment experience, his education, his special skills and training, the evidence of his past earnings, and the additional relevant factors of his decision to remain with L Metro Enterprises after an unexplained significant demotion which cut his earnings by more than half and his decision not to seek full time employment.
 {¶ 26} "39. In calculating the current support obligation, the following figures were used: Eric: Imputed income of $27,680 per annum minus a local tax credit of $553.60 and his new child support obligation from New York of $3380.00 per annum; Jennifer: Income of $27,672 per annum minus local tax credit of $553.44 with additions of $4496.00 per annum in child care (after tax credit) and $2362.36 in health insurance premiums per annum.
 {¶ 27} "40. Eric's child support obligations, based upon the child support calculation set forth in Ohio Revised Code Section 3119.022, is $548.90 per month per child, plus two percent administrative fee. See Worksheet No. 2. As this is less than a ten percent change from the current administrative order of $543.88 per month plus two percent administrative fee, no modification is required."
 {¶ 28} In his first assignment of error, Tomlinson argues that the trial court erred in giving the appellee credit for paying day care expenses. Specifically, he argues that Ms. Wheeler provided the trial court with no evidence to support her assertion that she pays $100 per week in day care expenses for Kamry. Tomlinson notes that while Wheeler testified she made weekly payments of $100 to a professional day care provided in Tipp City, Ohio she provided no receipts for those payments and has no written contract with the provider.
 {¶ 29} It is true that Ms. Wheeler provided no written receipts with her day care provider but that is not unusual. Secondly, Ms. Wheeler was asked by appellant's counsel whether she had any receipts here with her in court and she replied she did not. (Tr. 52). Ms. Wheeler did not testify that such receipts did not exist, but only that she had not brought them to court with her. Because of the age of Kamry, it was perfectly reasonable for appellee to use a day care provider for the child during the hours she is employed at the Veteran's Administration. In any event, it is axiomatic that the trial court is in the best position to evaluate the credibility of a witness. There is some substantial evidence to support the trial court's finding that appellee's day care expenses are reasonable and were properly deducted from the calculation of her annual income. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80. We also see no abuse of discretion in the court's use of this deduction to Ms. Wheeler's income. The first assignment of error is overruled.
 {¶ 30} In his second assignment, Tomlinson contends the trial court erred in not finding that the standard order of visitation should start immediately. We agree with the appellee that this assignment of error is now moot because the parties have already commenced the standard visitation schedule. This assignment of error is overruled.
 {¶ 31} In his last assignment, Tomlinson argues that the trial court abused its discretion in finding that he was voluntarily underemployed and thus not entitled to a reduction in the previous order of support.
 {¶ 32} R.C. 3119.01(C)(11) states as follows:
 {¶ 33} "`Potential income' means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed.
 {¶ 34} "(a) Imputed Income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
 {¶ 35} "(i) The parent's prior employment experience;
 {¶ 36} "(ii) The parent's education;
 {¶ 37} "(iii) The parent's mental and physical disabilities, if any;
 {¶ 38} "(iv) The availability of employment in the geographic area in which the parent resides;
 {¶ 39} "(v) The prevailing wage and salary levels in the geographic area in which the parent resides;
 {¶ 40} "(vi) The parent's special skills and training;
 {¶ 41} "(vii) Whether there is evidence that the parent has the ability to earn the imputed income;
 {¶ 42} "(viii) The age and special needs of the child for whom child support is being calculated under this section;
 {¶ 43} "(ix) The parent's increased earning capacity because of experience;
 {¶ 44} "(x) Any other relevant factor."
 {¶ 45} "[T]he question whether a parent is voluntarily (i.e. intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion that factual determination will not be disturbed on appeal." Rock v. Cabral (1993), 67 Ohio St.3d 108, at page 112. The trial court did not abuse its discretion in finding that the appellant is voluntarily underemployed.
 {¶ 46} Appellant contends he was moved from his position as a salaried store manager to an hourly staff driver through no fault of his own. He contends his high school degree and Associate's degree adequately prepared him for his current position and the change in his position is merely characteristic of a normal reassignment.
 {¶ 47} Appellee argues that appellant was reassigned by a mutual decision between himself and his employer and that appellant's education background and experience make him capable of earning more than $6.50 an hour, 25-35 hours a week.
 {¶ 48} The trial court specifically found that Tomlinson's testimony that his demotion was a part of a normal reorganization undertaken by his employer was not "credible." Indeed, there was evidence offered by appellee that Tomlinson told her that his decision to take a demotion was "that he had to go to school." (Tr. 42). The trial court was not required to accept appellant's explanation for his reduction in pay and work hours and we must defer to the trial court's factual determination absent an abuse of discretion. Rock v. Cabral, supra at 112. The trial court found that Eric has had successful managerial experience has an associate's degree in mathematics and possesses computer skills as well.
 {¶ 49} The trial court recognized that the primary purpose of R.C. 3113.215 is to ensure and protect the best interests of children. Although a trial court should proceed cautiously in imputing income to an obligor in light of the difficulty of obtaining compatible second incomes and because of the vicissitude of today's economy, we do not find the trial court abused its discretion in this matter. The appellant's third assignment of error is overruled. The judgment of the trial court is Affirmed.
Fain, P.J., and Young, J., concur.